# In the United States Court of Federal Claims

No. 12-818 C

(E-Filed:  July 31, 2013)

_____

KAREEM R. ROCK,

                Plaintiff,

v.

THE UNITED STATES,

                Defendant.

_____

)
)
)
)
)
)
)
)
)
)
)

Motion for Judgment on the
Administrative Record; RCFC
52.1; Disability Retirement Pay
Claim Under 10 U.S.C. § 1201

Jason E. Perry, Cheshire, CT, for plaintiff.

William P. Rayel, Trial Attorney, with whom were Stuart F. Delery, Acting Assistant
Attorney General, Jeanne E. Davidson, Director, and Scott D. Austin, Assistant Director,
Commercial Litigation Branch, United States Department of Justice, Washington, DC,
for defendant.  James D. Valentine, Major, General Litigation Division, Office of the
Judge Advocate General, Department of the Navy, of counsel.

OPINION

HEWITT, Chief Judge

       Kareem R. Rock (plaintiff or Mr. Rock), a Gulf War veteran with more than
thirteen years of service in the United States Navy (Navy), brings this suit alleging that he
"has been denied the disability retirement pay and benefits which he is entitled to under
10 U.S.C. § 1201."  See Compl., Docket Number (Dkt. No.) 1, ¶¶ 1, 7, 27.[1]  Specifically,
Mr. Rock argues that, based on the severity of his epilepsy, the United States (defendant
or the government), acting through the Navy, should have rated him one hundred percent

_____

[1] The Complaint (Compl.), Docket Number (Dkt. No.) 1, was filed with an appended
exhibit titled "Aff[i]davit of Kareem R. Rock."  See generally Compl. Ex. (Aff. of Kareem R.
Rock (Rock Affidavit)).  The Rock Affidavit is not part of the Administrative Record (AR) filed
in this case, and Kareem R. Rock (plaintiff or Mr. Rock) has not filed a motion requesting that
the Administrative Record be supplemented with the Rock Affidavit.  Accordingly, the court
does not consider the Rock Affidavit in deciding this case on the Administrative Record.

disabled instead of the twenty percent disability rating that he was assigned.  See id. ¶¶ 6, 27-28.

The parties have filed cross-motions for judgment on the Administrative Record (AR).  Before the court, in addition to the Complaint, are:  Defendant's Motion for Judgment upon the Administrative Record (defendant's Motion or Def.'s Mot.), Dkt. No. 6, and defendant's Appendix (Def.'s App.), Dkt. No. 6-1, both filed January 28, 2013; Plaintiff's Opposition to Defendant's Motion and Cross Motion for Judgment on the Administrative Record (plaintiff's Motion or Pl.'s Mot.), Dkt. No. 12, filed March 28, 2013; Defendant's Response to Plaintiff's Cross-Motion for Judgment on the Administrative Record and Reply to Plaintiff's Response to Defendant's Motion for Judgment upon the Administrative Record (Def.'s Reply), Dkt. No. 13, filed April 26, 2013; and Plaintiff's Reply to Defendant's Response to Plaintiff's Cross-Motion for Judgment on the Administrative Record (Pl.'s Reply), Dkt. No. 14, filed May 7, 2013. The Administrative Record was filed by defendant on CD-ROM on January 28, 2013. See generally Dkt. (noting filing).

For the following reasons, defendant's Motion is GRANTED and plaintiff's Motion is DENIED.

I.      Background

        A.      The Naval Disability Evaluation System

The Secretary of the Navy (the Secretary) is authorized to retire a service member with disability retirement pay if the Secretary determines that the member meets certain requirements and "is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay."  10 U.S.C. § 1201(a) (2006).  Specifically, a service member who has served fewer than twenty years is entitled to disability retirement pay after a finding of unfitness if the member's disability is permanent, was incurred in the line of duty and is rated "at least 30 percent under the standard schedule of rating disabilities used by the Department of Veterans Affairs [(VA)]."  Id. § 1201(b).

The VA disability rating schedule is contained in the Code of Federal Regulations. See, e.g., 38 C.F.R. § 4.124a (2012) (VA disability rating schedule for neurological conditions and convulsive disorders).  The applicable regulation for epilepsy provides a "General Rating Formula for Major and Minor Epileptic Seizures," with descriptions of the severity and frequency of seizures appropriately rated at each of 10, 20, 40, 60, 80 and 100 percent disabled.  Id.  For example, a rating of twenty percent is appropriate for a service member who suffers "[a]t least 1 major seizure in the last 2 years[] or at least 2 minor seizures in the last 6 months."  Id.  "A major seizure is characterized by the

generalized tonic-clonic convulsion with unconsciousness." Id.  "A minor seizure consists of a brief interruption in consciousness or conscious control associated with staring or rhythmic blinking of the eyes or nodding of the head ('pure' petit mal), or sudden jerking movements of the arms, trunk, or head (myclonic type) or sudden loss of postural control (akinetic type)." Id.  To be counted for ratings purposes, "seizures must be witnessed or verified at some time by a physician." Id. § 4.121.  Further, "[a]s to frequency [of seizures], competent, consistent lay testimony emphasizing convulsive and immediate post-convulsive characteristics may be accepted," and frequency "should be ascertained under the ordinary conditions of life (not while hospitalized)." Id.

Pursuant to Secretary of the Navy Instruction (SECNAVINST) 1850.4E (2002), the Secretary has delegated the authority to make fitness and disability retirement decisions to four elements of the Naval Disability Evaluation System:  (1) informal physical evaluation boards (PEB), (2) formal PEBs, (3) the PEB president and (4) the director of the Secretary of the Navy Council of Review Boards (the director).[2]  Def.'s App. A2 (SECNAVINST 1850.4E).  The procedures by which these elements evaluate a service member's physical fitness for duty and determine the proper disposition with respect to any physical disability are set forth in SECNAVINST 1850.4E.  See id. Disability evaluation for active service members generally commences only after a referral by a medical evaluation board (MEB), based on the MEB's finding that "the member's fitness for continued naval service [is] questionable by reason of physical or mental impairment." Id. at A10 (§ 3201(a)).

Once a member is referred for a disability evaluation, an informal PEB reviews the member's record and makes preliminary findings as to the member's "Fitness to continue naval service, degree of disability, and entitlement to disability pay" (the preliminary findings). See id. at A3 (§ 1004(b)-(c)).  The preliminary findings are issued by the PEB president "based on a preponderance of the evidence of the record." See id. (§ 1004(b)). "The preliminary findings become the PEB final determination upon a finding of Fit to continue naval service or upon" the member's waiver of his or her right to a formal hearing. Id.

---

[2] As the United States (defendant or the government) correctly points out, see Defendant's Motion for Judgment on the Administrative Record (defendant's Motion or Def.'s Mot.), Dkt. No. 6, at 4 n.2, the Secretary of the United States Navy (Navy) Council of Review Boards was formerly known as the Naval Council of Personnel Boards, compare App. (Def.'s App.), Dkt. No. 6-1, at A2 (Secretary of the Navy Instruction (SECNAVINST) 1850.4E (2002)) (identifying the director of the "Naval Council of Personnel Boards" as an element of the Department of the Navy Disability Evaluation System) with AR 2 (Mar. 16, 2012 letter denying petition for relief) (indicating that the sender was the director of the "Secretary of the Navy Council of Review Boards" (the director)).

If a member disagrees with the preliminary findings, he or she may request a formal hearing, to be conducted by a formal PEB.  See id. at A4 (§ 1004(c)(4)).  The formal PEB is obligated to "conduct a full and fair hearing," id. (§ 1004(f)), after which it recommends a final determination to the PEB president, see id. (§ 1004(c)(4)).  The PEB president then issues the final determination of the PEB.  Id. (§ 1004(f)).

If the PEB final determination is that a member is unfit for service, each unfitting disability is assigned a percentage rating based on the VA disability rating schedule.  See id. at A12 (§ 3801)).  If a member is found unfit but has a disability "not yet determined to be stabilized or permanent," the member may be placed on the temporary disability retired list.  Id. at A8 (§ 2081).

In certain limited circumstances, a member may submit a petition for relief to the director with respect to a formal PEB's final determination.  See id. at A5 (§ 1004(h)).  A petition for relief may be submitted only if:  (1) the member has new or newly discovered evidence that would have warranted a different decision by the PEB and that, by due diligence, could not have been presented during the prior PEB proceeding; (2) the member can show that the decision of the PEB was based on fraud, misrepresentation or other misconduct; or (3) the PEB decision was based on a mistake of law, for example, because it was "contrary to the great weight of evidence of record."  Id. at A16 (§ 5001(a)).

As discussed in detail below, Mr. Rock's processing through the Navy's disability evaluation system proceeded as follows:  After referral by an MEB in March 2009, an informal PEB found Mr. Rock unfit for duty and he was placed on the temporary disability retired list, effective October 31, 2009.  See infra Part I.B.  Nearly two years later, in October 2011, Mr. Rock underwent a routine periodic medical examination by Dr. Albert John Martins (Dr. Martins), after which, in November 2011, Mr. Rock was referred to a second informal PEB for reevaluation.  See id.  Mr. Rock rejected the preliminary findings of the second informal PEB, was granted a hearing before a formal PEB (the Board) in January 2012 and submitted a petition for relief from the final PEB determination, which the director denied on March 16, 2012.  See id.  The findings of the formal PEB and the director's denial of Mr. Rock's petition for relief are the subject of this suit.  See infra Part III.B.

B.     Mr. Rock's Naval Disability Evaluation System Processing

On February 9, 2009, after testing for a gastric disorder, Mr. Rock suffered what was described by a witness as a "convulsive seizure."  See AR 246 (Mar. 10, 2009 MEB report).  The following day at work, Mr. Rock was twice observed to suspend his activity, extend his right arm, and sit unresponsive and motionless (with a blank expression) for about a minute.  Id.  Mr. Rock was treated at his local emergency department and sent for

further evaluation before an MEB.  See id.; see also AR 272 (chronological documentation of care) (showing that an MEB request was submitted following a consultation on March 3, 2009).

Mr. Rock's MEB review was conducted on March 10, 2009.  AR 246-47 (Mar. 10, 2009 MEB report); see also AR 262-69 (record of MEB physical exam).  The MEB diagnosed Mr. Rock with "partial complex seizures with secondary generalization" based on its finding that he "had three, if not four seizures in the course of the past several months."  AR 246-477 (Mar. 10, 2009 MEB report); see also id. at 246 (recording, in addition to the three seizures suffered on February 9 and 10, 2009, Mr. Rock's description of a possible fourth seizure, based on an incident that occurred four or five months before the MEB).  The MEB also reported that, based on magnetic resonance imaging (MRI), Mr. Rock suffered from brain abnormalities, including "dysplastic changes involving the right temporal lobe," which were "of [congenital] origin[] but almost certainly . . . causally related to his clinically apparent seizures."  Id. at 247; cf. id. ("The MRI findings are suggestive of the Dyke-Davidoff-Masson syndrome.").  In addition, the MEB noted that Mr. Rock had been prescribed a twice daily dose of 500 mg of an antiepileptic drug known as Keppra and stated that a "need to increase the dose" was "anticipate[d]."  Id. at 247-48; see also AR 271 (chronological documentation of care) (showing that the prescription was issued during a consultation on March 3, 2009).  Mr. Rock was instructed to notify his doctor if he experienced "any symptoms that might suggest recurrence of a seizure."  AR 247 (Mar. 10, 2009 MEB report).

Based on the findings of the MEB, Mr. Rock was referred to a PEB for disability evaluation processing.  See AR 258 (MEB cover sheet) (showing receipt by PEB on April 27, 2009); see also AR 267 (record of MEB physical exam) (showing the examining doctor's assertion that Mr. Rock was "not qualified for service").  On May 26, 2009 an informal PEB found Mr. Rock unfit for service as a result of partial complex seizures.  AR 250 (2009 preliminary findings).  The informal PEB rated Mr. Rock forty percent disabled under VA code 8910 for "Epilepsy, grand mal" and recommended that he be placed on the temporary disability retired list.  Id.; cf. 38 C.F.R. § 4.124a (stating that a forty percent rating under VA code 8910, which corresponds to "Epilepsy, grand mal," is appropriate if a patient has had "at least 1 major seizure in the last 6 months or 2 in the last year").  In reaching this conclusion, the informal PEB members noted that Mr. Rock had suffered three or four seizures in the few months before the informal PEB, that the onset of seizures was new, that Mr. Rock had started taking medication and that Mr. Rock's nonmedical assessment recommended retention.  AR 245 (2009 disability evaluation work card) (containing handwritten notes of informal PEB members).  Mr. Rock accepted the preliminary findings and waived his right to a formal hearing.  AR 252 (July 8, 2009 election of options); see also AR 249 (July 9, 2009 notification of decision) (notifying Mr. Rock of the decision of the PEB president, which placed Mr. Rock on the temporary disability retired list effective October 31, 2009).

5

On August 11, 2009 the VA received a claim from Mr. Rock, which it decided on March 5, 2010.[3]  See AR 207, 214 (Mar. 2010 VA rating decision and cover letter).  The VA rated Mr. Rock sixty percent disabled for "Seizure disorder (major)," AR 208 (Mar. 2010 VA rating decision cover letter), on the basis that Mr. Rock reported a seizure in November 2008 and "reported three additional events of seizure activity prior to [his] discharge," AR 216 (Mar. 2010 VA rating decision); cf. 38 C.F.R. § 4.124a (stating that a rating of sixty percent is appropriate for epileptic seizures if the service member has "[a]verag[ed] at least 1 major seizure in 4 months over the last year[] or 9-10 minor seizures per week"); AR 246 (Mar. 10, 2009 MEB report) (recording Mr. Rock's description of three seizure events in February 2009 and of a fourth possible seizure event, based on an incident that occurred four or five months before the March 10, 2009 MEB).  The VA rating decision explained that "[a] higher evaluation is not warranted because seizure events have not average[d] at least one major seizure in three months over the past year or more than ten minor seizures weekly."  AR 216 (Mar. 2010 VA rating decision); cf. 38 C.F.R. § 4124a (describing the next highest rating, eighty percent, as "[a]veraging at least 1 major seizure in 3 months over the last year[] or more than 10 minor seizures weekly").  Mr. Rock's VA benefits based on the VA rating decision were made effective October 31, 2009, AR 216 (Mar. 2010 VA rating decision), the date that he was placed on the temporary disability retired list, see AR 249 (July 9, 2009 notification of decision) (stating that Mr. Rock was to be placed on the temporary disability retired list, with a requested date of October 31, 2009).

While on the temporary disability retired list, Mr. Rock's condition appeared to be "well controlled on low dose anti-epileptic drug therapy," AR 241 (record of examination by Dr. Martins (Martins examination)), and Mr. Rock "did not follow up with any physician for his seizure disorder" until the Navy required him to undergo a periodic evaluation, AR 198 (Jan. 26, 2012 formal PEB decision) (summarizing Mr. Rock's testimony).  Although Mr. Rock "remain[ed] at risk for seizure recurrence" during his time on the temporary disability retired list, AR 241 (Martins examination), he was able to work full time for the Army, using "skills similar to those of his office, grade, rank and rate while in the Navy," AR 198 (Jan. 26, 2012 formal PEB decision) (summarizing Mr. Rock's testimony before the formal PEB).

---

[3] The Complaint also discusses a second Department of Veterans Affairs (VA) rating decision dated March 16, 2012, see Compl. ¶¶ 16-17, 24, which Mr. Rock states rated him "at 100% disabled as a result of his seizure disorder," id. ¶ 16, and which Mr. Rock argues "is strong evidence that his proper rating is . . . 100%" because the rating decision was "based on examinations conducted 2-5 days before the . . . formal hearing [of the physical evaluation board (PEB)] in his case," id. ¶ 24.  However, as defendant correctly points out, see Def.'s Mot. 18, the March 16, 2012 VA rating decision is neither part of the Administrative Record nor the before the court as the subject of a motion to supplement the Administrative Record; accordingly the court does not consider it in deciding this case on the Administrative Record.

After about eighteen months on the temporary disability retired list, Mr. Rock was informed by a notice dated June 24, 2011 that he was to schedule an appointment for his first periodic physical evaluation.  AR 244 (notification for first periodic physical evaluation); cf. 10 U.S.C. § 1210 ("A physical examination shall be given at least once every 18 months to each member of the armed forces whose name is on the temporary disability retired list to determine whether there has been a change in the disability for which he was temporarily retired.").  Mr. Rock underwent his first periodic physical evaluation on October 20, 2011, during which he was examined at Walter Reed National Military Medical Center by Dr. Martins.  AR 240 (Martins examination).  Dr. Martins stated in the record of the examination that, since Mr. Rock's MEB, Mr. Rock reported suffering "one to two partial seizures every 4 to 6 months" but no "grand mal or generalized seizures."[4]  Id.  Dr. Martins also reported that Mr. Rock "continue[d] to

---

[4] Mr. Rock contends that he did not make this statement, raising a question of fact.  See Compl. ¶ 19.  Defendant responds that Mr. Rock "has provided no basis to question the accuracy of the report of Dr. [Albert John Martins (Dr. Martins)], a Colonel in the United States military."  Def.'s Mot. 16 n.4.  Defendant argues that, "'in the absence of clear evidence to the contrary, the court [must] presume that public officers have properly discharged their official duties.'"  Id. (quoting Rizzo v. Shinseki, 580 F.3d 1288, 1292 (Fed. Cir. 2009).

"The existence of a question of fact . . . neither precludes the granting of a motion for judgment on the administrative record nor requires this court to conduct a full blown evidentiary proceeding."  CRAssocs., Inc. v. United States, 102 Fed. Cl. 698, 710 (2011) (citing, inter alia, Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005)), aff'd, 475 F. App'x 341 (Fed. Cir. 2012).  Instead, when confronted with a question of fact on a motion for judgment on the administrative record, the court must make factual findings based on the evidence in the administrative record.  See Bannum, 404 F.3d at 1356.  Further, a plaintiff waives an argument in this court when the appropriate time for asserting it would have been in prior administrative proceedings.  See Metz v. United States, 466 F.3d 991, 999 (Fed. Cir. 2006) (holding that the plaintiff waived an argument in this court by failing to assert it "in either his initial or reconsideration petition" before a military corrections board); Murakami v. United States, 398 F.3d 1342, 1354 (Fed. Cir. 2005) (affirming this court's determination that the plaintiff was precluded from raising an issue for the first time in this court because the plaintiff had failed to raise the issue in his claim before an administrative office); see also United States v. L.A. Tucker Truck Lines, Inc. (L.A. Tucker), 344 U.S. 33, 37 (1952) (stating the "general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice").

Here, plaintiff was aware that both the second informal PEB and the formal PEB relied on the record of his examination by Dr. Martins (Martins examination)--and, in particular, the representation contained in the Martins examination as to Mr. Rock's self-reported seizure history--but Mr. Rock waited until bringing suit in this court to challenge the accuracy of that representation.  Specifically, the preliminary findings of the second informal PEB (the 2011 preliminary findings) include a note stating that Mr. Rock "believe[d] he may suffer from 1-2 partial (minor) seizures every 4-6 months" but that he had experienced "[n]o Grand-mal seizures

tolerate Keppra at 500 mg twice a day" and "has had no new medical issues develop over the past two years." Id. Dr. Martins concluded that Mr. Rock's "condition and prognosis" were "good" and "ha[d] not changed since [Mr. Rock was] placed on the [temporary disability retired list]." Id. at 241.

Following Mr. Rock's first periodic physical evaluation, a second informal PEB was conducted to reevaluate Mr. Rock's fitness for duty. See id. at 240 (showing receipt of Martins examination by informal PEB on November 8, 2011). On November 10, 2011 the second informal PEB found Mr. Rock unfit for duty and recommended separation from the Navy with severance pay. AR 237 (2011 preliminary findings). Mr. Rock was

while on [the temporary disability retired list]." AR 238 (2011 preliminary findings). Mr. Rock contested the preliminary findings generally, see AR 239 (Nov. 14, 2011 election of options), but the formal PEB decision makes no reference to Mr. Rock's specifically contesting the representation of his reported seizure history, see generally AR 197-200 (Jan. 26, 2012 formal PEB decision). Instead, the formal PEB decision states only that, in his testimony, Mr. Rock contended that new evidence--the March 2010 VA rating decision and the record of Mr. Rock's examination by Dr. Peter Wolf Kaplan (Kaplan examination)--"supported an increased rating." See id. at 199.

Moreover, the formal PEB decision quotes from the Martins examination, "'The pt [sic] believes he may have suffered one to two partial seizures every 4 to 6 months. He has not had any grand mal or generalized seizures.'" Id. at 198; accord AR 240 (Martins examination). However, Mr. Rock's petition for relief, which challenged the formal PEB decision, did not allege that this representation of Mr. Rock's self-reported seizure history was incorrect. See generally AR 8-16 (Mar. 9, 2012 petition for relief). Instead, Mr. Rock's petition for relief challenged the formal PEB decision on the grounds that it "relied entirely on the [Martins examination]," which, according to Mr. Rock's petition for relief, led to a decision "not supported by a preponderance of the evidence." Id. at 10. Further, the petition for relief discussed the relative credibility of the representation of seizure history in the Martins examination, but nowhere did it allege that the representation was a misrepresentation. See id. at 12 (stating that the formal PEB "relied on subjective statements of frequency from Dr. Martins' evaluation, but deemed similar statements in Dr. Kaplan's assessment as less credible").

The court finds that plaintiff has waived his argument that the Martins examination inaccurately reported his representation as to his seizure history because the Administrative Record shows that plaintiff was aware of the representation about his seizure history attributed to him by Dr. Martins but twice chose not to challenge its accuracy in the earlier administrative proceedings. Cf. L.A. Tucker, 344 U.S. at 37; Metz, 466 F.3d at 999; Murakami, 398 F.3d at 1354. In addition, the court notes that even if plaintiff had not waived this argument, plaintiff has offered no "clear evidence" sufficient to overcome the court's presumption that Dr. Martins, as a public officer, "properly discharged [his] official duties" in accurately recording Mr. Rock's representation of his seizure history and frequency in the medical record. Cf. Rizzo, 580 F.3d at 1292.

8

assigned a disability rating of twenty percent for partial complex seizures with secondary generalization under VA code 8910.[5]  Id.; see also AR 243 (2011 disability evaluation work card) (containing handwritten notes of informal PEB members, including:  "20% in deference to member with report of occas[ional] 'minor' seizures" and "[f]inalize VA[] [code] #8910 @ 20%"[6]).  The preliminary findings noted that Mr. Rock "believe[d] he may suffer from 1-2 partial (minor) seizures every 4-6 month[s]."  AR 238 (2011 preliminary findings); accord AR 243 (2011 disability evaluation work card) (containing the following handwritten note:  "'possible' partial → 'minor' seizures every 4-6 months

_____

[5]  The Complaint alleges that, "[o]n November 11, 2011, the Informal PEB found Mr. Rock to be unfit due to his seizure disorder" but "changed the basis for his unfitness to 'epilepsy, petit mal'" under VA code 8910.  Compl. ¶ 12.  However, contrary to plaintiff's assertion, the disability rating code assigned by the informal PEB, VA code 8910, is for epilepsy, grand mal-- not petit mal.  See AR 237 (2011 preliminary findings) (dated November 10, 2011 and showing VA code 8910); 38 C.F.R. § 4.124a (2012) (describing rating codes for epilepsy).  It was the formal PEB that changed Mr. Rock's disability rating to VA code 8911 for epilepsy, petit mal.  See AR 198 (Jan. 26, 2012 formal PEB decision) (determining that Mr. Rock's condition was "most appropriately rated under VA code 8911" for "Epilepsy, petit mal").

The court notes that the preliminary finding that Mr. Rock had not suffered any grand mal seizures while on the temporary disability retired list--that is, between Mr. Rock's October 31, 2009 placement on the temporary disability retired list and the informal PEB's November 10, 2011 decision, see AR 238 (2011 preliminary findings); AR 249 (July 9, 2009 notification of decision) (stating that Mr. Rock was to be placed on the temporary disability retired list, with a requested date of October 31, 2009)--appears to conflict with the informal PEB's assignment of code 8910, under which a twenty percent rating is appropriate if the service member has suffered "[a]t least 1 major seizure in the last 2 years," see 38 C.F.R. § 4.124a.  However, VA codes 8910 and 8911 are rated on the same scale for epilepsies.  See id.  A disability rating of twenty percent is appropriate under code 8911 if a patient has suffered "at least 2 minor seizures in the last 6 months."  Id.  The preliminary finding that Mr. Rock "believe[d] he may suffer from 1-2 partial (minor) seizures every 4-6 month[s]," AR 238 (2011 preliminary findings), would therefore be consistent with a twenty percent disability rating under code 8911, cf. 38 C.F.R. § 4.124a; AR 198 (Jan. 26, 2012 formal PEB decision) (changing Mr. Rock's disability rating to VA code 8911).

[6]  The court notes that, in the handwritten note quoted above, both the last digit of the VA disability rating code and the percentage disability rating appear to have been written over.  See AR 243 (2011 disability evaluation work card).  The court cannot discern what VA code was originally written in the note but observes that the printed portion of the page records VA code 8910.  See id.  Neither can the court discern the percentage originally written in the note.  See id.  However, the court observes that the printed portion of the page contains a separate handwritten correction indicating a prior intention to assign a disability rating of ten percent, which appears to have been later changed to "20% in deference to [the] member['s] . . . report of occas[ional] 'minor' seizures," as indicated by the handwritten note so stating.  See id.

9

by member's report").  The preliminary findings also noted that Mr. Rock was "[o]n medication," was "doing well" and had not suffered any grand-mal seizures while on the temporary disability retired list.  AR 238 (2011 preliminary findings); accord AR 243 (2011 disability evaluation work card) (containing the following handwritten notes:  "on Rx--controlled," "Stable" and "No Grand-Mal seizures on [temporary disability retired list]" (some capitalization omitted)).  Mr. Rock did not accept the preliminary findings of the second informal PEB and requested a formal PEB.  AR 239 (Dec. 8, 2011 election of options).

Prior to the formal PEB, on December 15, 2011, Mr. Rock was examined at the Johns Hopkins Bayview Medical Center by Dr. Peter Wolf Kaplan (Dr. Kaplan).  AR 227 (record of examination by Dr. Kaplan (Kaplan examination)).  Based on Dr. Kaplan's review of Mr. Rock's 2009 MRI and Mr. Rock's "story," Dr. Kaplan concluded that Mr. Rock appeared to have "right temporal lobe simple partial seizures characterized by strange smell and dizziness followed by staring, representing complex partial seizures, which may then be followed by secondary generalization."  Id. at 229.  Dr. Kaplan stated in the record of the examination that Mr. Rock thought he had experienced six to eight tonic-clonic or grand mal seizures in the six months before the examination, with the last one occurring on November 26, 2011.  Id. at 227.  The record of examination also noted that Mr. Rock reported having about ten episodes per week, lasting approximately thirty seconds each, that consisted of "the light appearing bright, a feeling coming over him, a weird smell, electric shock[,] [t]ightening his grip to brace himself, blurring of vision, possibly some sweatiness, [and] feeling overheated."  Id.  Mr. Rock represented during the examination that he had experienced "more than 50 of these" episodes, with the most recent one occurring the day before the examination.  Id.  Although not mentioned in the record of Mr. Rock's October 20, 2011 examination by Dr. Martins, the record of Mr. Rock's examination by Dr. Kaplan states that Mr. Rock's "[i]nitial treatment with Keppra at 500 mg twice a day was increased on October 20th to three times a day because his seizures have not stopped."  Id.; see also Compl. ¶ 11 (stating that, "on [the] same date [as the Martins examination,] Mr. Rock's medication was increased from 500 mg of Keppra twice a day to the same amount of Keppra three time per day due to his seizures not being controlled").

On the same day as the examination by Dr. Kaplan, Mr. Rock also underwent an electroencephalogram (EEG) test, which "show[ed] a single clear epileptic discharge in the right posterior temporal region . . . and another poorly formed discharged over the temporal region during drowsiness."  AR 230 (EEG report).

Mr. Rock's formal PEB convened on January 25, 2012 and a formal PEB decision was issued on January 26, 2012.  AR 197 (Jan. 26, 2012 formal PEB decision).  Mr. Rock, who was represented by counsel, presented the formal PEB with his testimony and new evidence not considered by the informal PEB, including the March 2010 VA rating

decision and the record of his examination by Dr. Kaplan.  See id. at 197-98 (describing new evidence); AR 205 (formal PEB petition) (same); AR 207-226 (Mar. 2010 VA rating decision and cover letter) (attached as part of the appendix to the formal PEB petition); AR 227-29 (Kaplan examination) (noting that the March 2010 VA rating decision was new evidence); AR 230-31 (EEG report) (same).  The formal PEB, "[a]fter careful review of all the available evidence and based on a unanimous opinion," found Mr. Rock "Unfit to continue naval service due to a physical disability with a total disability rating of 20% [under VA code 8911 for epilepsy, petit mal], warranting removal from the Temporary Disability Retired List . . . and separation from the naval service with severance pay."  AR 197 (Jan. 26, 2012 formal PEB decision).

> The formal PEB explained:

> [T]he record adequately reflects that [Mr. Rock] has suffered 2 minor seizures over the last 4 to 6 months, which is consistent with the member's medication.  As such, the member clearly meets the criteria for a 20% rating under VA code 8911.  Further, this rating is corroborated by the member's medication dosage and his ability to be employed full-time.

Id. at 198-99; see also 38 C.F.R. § 4.124a (stating that a disability rating of twenty percent is appropriate under VA code 8911 for epilepsy, petit mal, if a patient has suffered "at least 2 minor seizures in the last 6 months").  With respect to the new evidence presented by Mr. Rock, the formal PEB explained,

> While [the Kaplan examination] described 10 minor seizures weekly and an average of 1 major seizure per month over the last 6 months, the Formal [PEB] finds the factual reporting within the [Martins examination], as it relates to [Mr. Rock's] seizure frequency, history, treatment, and prognosis to be the most credible and trustworthy evidence available.

AR 199 (Jan. 26, 2012 formal PEB decision).

> The formal PEB appeared to find the seizure history and frequency reported in the Kaplan examination to be less credible than that reported in the Martins examination, at least in part, because the Kaplan examination contained "new and uncorroborated assertions."  Id.; cf. 38 C.F.R. § 4.121 (requiring that "seizures must be witnessed or verified at some time by a physician" to warrant a rating for epilepsy and stating that, "[a]s to frequency [of seizures], competent, consistent lay testimony emphasizing convulsive and immediate post-convulsive characteristics may be accepted").  Further, the formal PEB noted Mr. Rock's testimony that he "did not follow up with any physician for his seizure disorder for [the] two years" preceding his temporary disability retired list first periodic examination by Dr. Martins, AR 198 (Jan. 26, 2012 formal PEB

decision); cf. AR 247 (Mar. 10, 2009 MEB report) (stating that Mr. Rock was instructed to notify his doctor if he experienced "any symptoms that might suggest recurrence of a seizure"), and that he was employed full time during his time on the temporary disability retired list--facts that the formal PEB appeared to have weighed against a finding of greater disability, see AR 198 (Jan. 26, 2012 formal PEB decision).

Mr. Rock rejected the formal PEB findings, see AR 185 (Feb. 24, 2012 election of options), and, through counsel, filed a petition for relief from the formal PEB decision on March 9, 2012, see generally AR 8-16 (Mar. 9, 2012 petition for relief).  Mr. Rock's petition for relief was based on an alleged "mistake of law" by the formal PEB, specifically, "that the PEB reached a decision . . . contrary to the great weight of the evidence." Id. at 8; see also id. at 10 ("The Board acted improperly and did not reach a conclusion supported by the preponderance of the evidence . . . [because] the Board relied entirely on the [Martins examination].").  Mr. Rock contended that the formal PEB should have given more weight to other evidence, including "imaging tests" and, in particular, the EEG performed at Johns Hopkins following the Kaplan examination, Mr. Rock's statements to Dr. Kaplan about his seizure frequency, a note in the record of the Kaplan examination that Mr. Rock's medication was increased, and a note in the record of the Martins examination that Mr. Rock's condition had not changed since the 2009 informal PEB rated Mr. Rock at forty percent disabled.  See id. at 12.  Mr. Rock argued that he was "entitled to at least an 80% disability rating for his seizure disorder" under VA code 8910 for epilepsy, grand mal, because "[h]e experiences about 10 30-second seizures per week and has experienced approximately six to eight tonic-clonic or grand mal seizures in the past six months." Id. at 12-13; cf. 38 C.F.R. § 4.124a (stating that an eighty percent disability rating is appropriate if a service member "averag[es] at least 1 major seizure in 3 months over the last year[] or more than 10 minor seizures weekly").

The director rejected Mr. Rock's petition for relief on March 16, 2012, finding the decision of the formal PEB "to be supported by a preponderance of the evidence."  AR 2 (Mar. 16, 2012 letter denying petition for relief).  The director explained:

> That you suffer from EPILEPSY is not in dispute.  The frequency of seizures, however, is of critical importance in determining a disability rating pursuant to the VA [disability rating schedule].  In that regard, I concur with the [formal] PEB's opinion [that the Martins examination] more accurately depicted your seizure frequency than did the [Kaplan examination].

Id.  The director noted the discrepancy between Mr. Rock's reported seizure history in the Martins examination (one to two minor seizures every four to six months and no grand mal seizures) and Kaplan examination (six to eight grand mal seizures over the past six months).  Id.  The director observed that the examinations were conducted

approximately eight weeks apart, id. at 2, and that it was "unclear" as to "[w]hy that severe history of seizures [reported in the Kaplan examination] was not documented and reported at [the Martins examination]," id. at 3.  The director concluded that, given the discrepancy between the reported seizure histories and the lack of "documented medical evidence on file to support [Mr. Rock's] claim" that he suffered from the greater frequency of seizures reported in the Kaplan examination (such as "emergency room visit notes or similar notes indicating medical treatment sought due to a seizure"), he agreed with the formal PEB that the seizure frequency reported in the Martins examination was more credible.  Id. at 2-3.

After Mr. Rock's petition for relief was denied, the PEB president notified Mr. Rock that he was to be separated "from the Naval Service with severance pay but without further disability benefits under the provisions of Title 10 of U.C.S. § 1210" based on a finding of unfitness and a twenty percent disability rating under VA code 8911.  AR 1 (Mar. 27, 2012 notification of decision).  Although Mr. Rock was notified of his "right to petition the Board for Correction of Naval Records . . . if [he] believe[d] either an error or injustice was committed in [his] case," AR 3 (Mar. 16, 2012 letter denying petition for relief), Mr. Rock did not petition the corrections board and, instead, filed suit in this court on November 28, 2012, see generally Compl.[7]

II.    Legal Standards

A.    Jurisdiction

The United States Court of Federal Claims (Court of Federal Claims) is a court of limited jurisdiction that, pursuant to the Tucker Act, may hear "any claim against the United States founded . . . upon . . . any Act of Congress or any regulation of an executive department."  28 U.S.C. § 1491(a) (2006).  The Tucker Act serves as a waiver of sovereign immunity and a jurisdictional grant, but it does not create a substantive cause of action.  Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).  A plaintiff must, therefore, satisfy the court that "'a separate

---

[7] Although the circumstances of this case are somewhat unusual in that Mr. Rock is challenging the formal PEB decision directly in this court without first appealing the decision at the agency level (through the Board for Correction of Naval Records), there is no requirement that Mr. Rock exhaust his administrative remedies prior to seeking judicial review.  See Heisig v. United States, 719 F.2d 1153, 1155 (Fed. Cir. 1983 (stating that, although relief [in military pay cases] has usually been first sought from military correction boards . . . , there is . . . no requirement of exhaustion of administrative remedies prior to pursuit of judicial review"); cf. Friedman v. United States, 159 Ct. Cl. 1, 24, 310 F.2d 381, 395-96 (1962) (stating that the judicial claim for disability retirement pay accrues upon final action of a board competent to decide eligibility); Chambers v. United States, 417 F.3d 1218, 1225 n.2 (Fed. Cir. 2005) (stating that a PEB is competent to decide eligibility).

source of substantive law . . . creates the right to money damages.'" <u>Id.</u> (quoting <u>Fisher v. United States</u>, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)). Section 1201 of title 10 of the United States Code, which governs military retirement for disability, is such a money-mandating statute. <u>Chambers v. United States</u>, 417 F.3d 1218, 1223 (Fed. Cir. 2005); <u>Fisher</u>, 402 F.3d at 1174-75; <u>see</u> 10 U.S.C. § 1201 (governing disability retirement pay).

The court's six-year statute of limitations, a condition on the Tucker Act's waiver of sovereign immunity, further limits the court's jurisdiction. <u>See</u> <u>Martinez v. United States</u>, 333 F.3d 1295, 1316 (Fed. Cir. 2003) (en banc) ("It is well established that statutes of limitations for causes of action against the United States, being conditions on the waiver of sovereign immunity, are jurisdictional in nature."); <u>see also</u> <u>Soriano v. United States</u>, 352 U.S. 270, 276 (1957) (stating that the United States Supreme Court "has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed"). The statute of limitations provides that claims over which the Court of Federal Claims would otherwise have jurisdiction "shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501.

Although equitable remedies are generally outside this court's jurisdiction, equitable relief "as an incident of and collateral to" judgment for money damages is available "to provide an entire remedy and to complete the relief afforded by the judgment." 28 U.S.C. § 1491(a)(2). "[P]lacement in appropriate duty or retirement status" is one such equitable remedy available in this court "as an incident of and collateral to" a money judgment. <u>Id.</u>; <u>see</u> <u>Haskins v. United States</u>, 51 Fed. Cl. 818, 822 (2002).

B.      Judgment on the Administrative Record

Rule 52.1(c) of the Rules of the United States Court of Federal Claims (RCFC) provides for motions for judgment on the administrative record. <u>See</u> RCFC 52.1(c)(1) (providing that "a party may move for partial or other judgment on the administrative record"). A motion for judgment on the administrative record is distinguishable from a motion for summary judgment in that there is no requirement that all material facts be undisputed. <u>See</u> <u>Bannum, Inc. v. United States</u>, 404 F.3d 1346, 1355 (Fed. Cir. 2005); <u>see also</u> RCFC 52.1 rules committee note (2006) ("Summary judgment standards are not pertinent to judicial review upon an administrative record."). "The standards and criteria governing the court's review of agency decisions [on a Rule 52.1(c) motion] vary depending upon the specific law to be applied in particular cases." RCFC 52.1 rules committee note (2006).

In reviewing ratings decisions in military disability pay cases, the court's role is limited to determining whether a decision of a board competent to make determinations as to a soldier's eligibility for disability retirement "is arbitrary, capricious, contrary to law, or unsupported by substantial evidence."  Chambers, 417 F.3d at 1227; Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983); see Stephens v. United States, 174 Ct. Cl. 365, 371-72, 358 F.2d 951, 954 (1966) ("This court has held on many occasions that it has no power to review the decisions of the Secretary of one of the military departments or his authorized representatives in such a case unless the petitioner shows by cogent and clearly convincing evidence that such determinations are arbitrary, capricious, or not supported by substantial evidence.").  The burden is on the plaintiff to show "by cogent and clearly convincing evidence that the [military's] decision was arbitrary, capricious, or unlawful."  Dorl v. United States, 200 Ct. Cl. 626, 633 (1973).

"The arbitrary and capricious standard . . . is highly deferential" and "requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors."  Advanced Data Concepts, Inc. v. United States (Adv. Data Concepts), 216 F.3d 1054, 1058 (Fed. Cir. 2000).  To show that a military disability evaluation board acted arbitrarily and capriciously, a plaintiff must demonstrate that evidence was ignored or unreasonably construed or that designated duties were not performed by the board.  See Stephens, 174 Ct. Cl. at 373-74, 358 F.2d at 955 (finding reasonable the determination of the Secretary of the United States Army that the plaintiff in that case was fit for duty when the record did "not warrant the conclusion that the personnel involved ignored relevant and competent evidence, . . . unreasonably construed the significant body of medical documents before them, or . . . failed to discharge their designated duties" in any other manner).  The court cannot substitute its judgment for that of examining physicians, a medical evaluation board or physical evaluation board.  See Heisig, 719 F.2d at 1156-57; see also Sanders v. United States, 219 Ct. Cl. 285, 302, 594 F.2d 804, 814 (1979) (en banc) ("[W]hile [the court] may disagree with a correction board about whether or not a specific situation was unjust, [the court] will not substitute [its] judgment for the board's when reasonable minds could reach differing conclusions."), superseded by statute on other grounds, Defense Officer Personnel Management Act of 1980, Pub. L. No. 96-513, § 105, 94 Stat. 2835, 2859-60 (codified as amended at 10 U.S.C. § 628), as recognized in Richey v. United States, 322 F.3d 1317 (Fed. Cir. 2003).

In determining whether a military disability evaluation board's decision was supported by substantial evidence, "[T]he standard of review does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence."  Heisig, 719 F.2d at 1157 (emphasis omitted). "Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  Jennings v. Merit Sys. Prot. Bd., 59 F.3d 159, 160 (Fed. Cir. 1995).

III.    Discussion

   A.    Jurisdiction

   Although not contested here, the court must satisfy itself at the outset of the case that its jurisdiction is proper.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998); PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359, 1365 (Fed. Cir. 2007).  In this case, the court is satisfied that plaintiff's claim under 10 U.S.C. § 1201 is properly before it.  Plaintiff's claim is based on a money-mandating statute, cf. supra Part II.A (stating that 10 U.S.C. § 1201 is money mandating); Jan's Helicopter Serv., Inc., 525 F.3d at 1306 (stating that a separate money-mandating source of law is necessary for Tucker Act jurisdiction), and plaintiff's claim has accrued within the court's six-year statute of limitations, see supra Part I.B (stating that the PEB decision and the director's decision to deny plaintiff's petition for relief, which are pleaded as the basis of Mr. Rock's disability pay claim under 10 U.S.C. § 1201, occurred in 2012); cf. 28 U.S.C. § 2501 (providing for six-year statute of limitations).  Further, to the extent that plaintiff seeks relief in the form of placement in the appropriate retirement status, see Compl. ¶ 28 ("Mr. Rock is entitled to a permanent disability retirement finding with a 100% rating as of March 27, 2012"), such relief is within the court's jurisdiction "as an incident of and collateral to" a money judgment under 10 U.S.C. § 1201, see supra Part II.A; cf. 28 U.S.C. § 1491(a)(2); Haskins, 51 Fed. Cl. at 822.

   B.    Cross-Motions for Judgment on the Administrative Record

   Plaintiff alleges that the formal PEB findings and the director's denial of Mr. Rock's petition for relief were arbitrary and capricious, contrary to law and unsupported by substantial evidence.  Compl. ¶¶ 20-23; see Pl.'s Mot. 2 (alleging that the PEB and the director "erred in applying erroneous standards to Mr. Rock's case, arbitrarily rejected favorable evidence warranting a higher rating, and failed to comment on or weigh favorable evidence").[8]  Defendant counters that "Mr. Rock's arguments are meritless and

---

   [8] Plaintiff also states that he "was denied . . . a full and fair hearing to which he was entitled."  Pl.'s Opp'n to Def.'s Mot. & Cross Mot. for J. on the AR (Pl.'s Mot.), Dkt. No. 12, at 2.  To the extent that plaintiff asserts a standalone claim based on the Due Process Clause of the Fifth Amendment to the United States Constitution, this court lacks jurisdiction over plaintiff's due process claim because the Due Process Clause is not money mandating.  Cf. James v. Caldera, 159 F.3d 573, 581 (Fed. Cir. 1988) (stating that "it is well established" that this court lacks jurisdiction over due process claims because the Due Process Clause is not money mandating); United States v. Connolly, 716 F.2d 882, 887 (Fed. Cir. 1983) (en banc) (similar).  However, a constitutional issue may be "a factor in [a] claim for which Tucker Act jurisdiction is established."  Holley v. United States, 124 F.3d 1462, 1466 (Fed. Cir. 1997).

ultimately amount to no more than an attempt to second guess the Navy's weighing of the relevant medical evidence." Def.'s Mot. 12. Further, defendant argues that Mr. Rock waived three of his arguments regarding the actions of the formal PEB. Def.'s Reply 1-2.

1.    Plaintiff Has Waived Arguments That Would Have Been Appropriately Raised in His Petition for Relief

The court first considers whether plaintiff has waived certain arguments by not raising them during the administrative proceedings. Defendant contends that Mr. Rock waived three specific arguments by failing to include them in his petition for relief: (1) that the formal PEB erred by "us[ing] the wrong standard of review," (2) that the formal PEB erred by "us[ing] rating factors not permitted by the [VA disability rating schedule]" and (3) that the formal PEB erred by "fail[ing] to consider Mr. Rock's VA [rating decision]." See id. In support of this position, defendant relies on Metz v. United States, 466 F.3d 991 (Fed. Cir. 2006). See id. at 2 (discussing Metz).

In Metz, the United States Court of Appeals for the Federal Circuit (Federal Circuit) considered an involuntary discharge claim under 37 U.S.C. § 204. See Metz, 466 F.3d at 993. The Federal Circuit explained in Metz that, given the limited standard of review that the court must apply to a decision of a military corrections board--that is, whether the military's decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law"--and given that "the issue of voluntariness is not a question of subject matter jurisdiction . . . , a plaintiff may waive an argument with respect to that issue by not asserting it before the [corrections board]." Id. at 998. Accordingly, in Metz, the Federal Circuit held, "Because [the plaintiff] did not assert in either his initial or reconsideration petition before the [corrections board] that his separation was involuntary because he had received ineffective assistance of counsel, we conclude that he waived his ability to challenge the [correction board]'s decision based on the voluntariness of his separation." Id. at 999 (citing, inter alia, United States v. L.A.

_____

Here, plaintiff's due process argument is discussed, beyond the initial allegation, only in the context of plaintiff's allegation that the Navy applied an incorrect evidentiary standard. See Pl.'s Reply to Def.'s Resp. to Pl.'s Cross-Mot. for J. on the AR, Dkt. No. 14, at 4-5 (arguing "that the error in using the wrong evidentiary standard is so great that it infringes on constitutional and statutory rights, that it dilutes that protections of a full and fair hearing and makes review impossible for a reviewing court as the original board, if it mistook the correct standards, may well have fundamentally misunderstood its obligation in determining facts according [to] the standards"). Although the court concludes in this Opinion that plaintiff has waived his argument with respect to the evidentiary standard employed by the formal PEB, see infra Part III.B.1, the court considers whether plaintiff's due process was violated as a factor in plaintiff's allegation that the director employed an incorrect evidentiary standard, see infra Part III.B.3 (addressing the evidentiary standard employed by the director); cf. Holley, 124 F.3d at 1466.

Tucker Truck Lines, Inc. (L.A. Tucker), 344 U.S. 33, 37 (1952) ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."); Murakami v. United States, 398 F.3d 1342, 1354 (Fed. Cir. 2005) (affirming this court's determination that the plaintiff was precluded from raising an issue for the first time in this court because the plaintiff had failed to raise the issue before the corrections board)).

Plaintiff argues that Metz is distinguishable because, in this case, plaintiff is directly appealing from the director's denial of plaintiff's petition for relief--instead of appealing from a decision of a military corrections board, as was the case in Metz.  Pl.'s Reply 2.  According to plaintiff, this "makes the procedural posture quite different" because there was no final determination at the agency level until the director acted on plaintiff's petition for relief, and therefore there was not yet any "action of the [director] . . . [as to] which plaintiff could have complained" in his petition for relief.  Id.; see also id. at 3-4 (similar).  However, plaintiff's argument fails to address defendant's contention that plaintiff has waived his arguments with respect to the actions of the formal PEB--not his arguments with respect to the actions of the director.  Cf. Def.'s Reply 1-2 (arguing that three of plaintiff's arguments about certain PEB actions are waived because they were not raised in the petition for relief).  Moreover, there is no requirement under Metz that there must be a final determination at the agency level before the plaintiff can appropriately raise an argument[9]; instead, Metz stands for the proposition that a plaintiff waives his argument when he could have appropriately raised the argument during prior agency proceedings but waits to raise the argument until he appeals the agency decision to this court.  See Metz, 466 F.3d at 999 (holding that the plaintiff waived an argument in this court by failing to assert it "in either his initial or reconsideration petition" before the corrections board); see also L.A. Tucker, 344 U.S. at 37 (stating the "general rule" that the courts should not overturn an agency decision unless the agency "has erred against objection made at the time appropriate under its practice").  The court is not persuaded by plaintiff's attempt to distinguish Metz.

Plaintiff argues in the alternative that, "[t]o the extent that Metz is applicable, plaintiff raised the issues before the PEB and the [director] that the defendant claims he did not."  Pl.'s Reply 2.  Plaintiff is incorrect.  First, plaintiff argues that his petition for

---

[9] Even if a final determination requirement did exist, the formal PEB decision signed by the PEB president is a "final determination" that "can only be changed if a petition for relief from final action is accepted by the director."  AR 201 (statement of understanding regarding formal PEB decision) (capitalization omitted) (signed by Mr. Rock); Def.'s App. A5 (SECNAVINST 1850.4E § 1004(h)) ("The findings of the PEB are final upon issuance by the President, PEB . . . .  The findings may not be changed, modified, set aside or reopened except for the correction of errors or upon submission of a Petition for Relief . . . .").

relief sufficiently raised the issue of whether the PEB applied the correct evidentiary standard by alleging that the PEB's finding was "'not supported by a preponderance of the evidence.'" Id. at 2-3 (quoting AR 10 (Mar. 9, 2012 petition for relief)).  However, plaintiff's allegation in the petition for relief is not the same as an argument that the formal PEB applied the wrong evidentiary standard.  By plaintiff's own reasoning, plaintiff's assertion in his petition for relief that the PEB finding was not supported by a preponderance of the evidence only challenges "the [PEB's] findings as a whole . . . [and] [does] not address[] the issue of whether the evidentiary standard used was correct."  Cf. Pl.'s Mot. 4 (arguing that the director could not cure the formal PEB's alleged use of the incorrect standard "by making findings that the decision was supported by the correct standard[] . . . because [the director] is only reviewing the findings as a whole . . . [and] is not addressing the issue of whether the evidentiary standard used was correct").

Next, plaintiff argues that he "submitted arguments that the PEB and [director] made an erroneous rating decision under the [VA disability rating schedule]," Pl.'s Reply 3 (citing AR 8-16 (Mar. 9, 2012 petition for relief)), but this is not the same as arguing that the PEB used rating factors not permitted under the VA disability rating schedule. The court notes that plaintiff cites the entire petition for relief--without pinpointing any particular place in which plaintiff challenged the PEB's decision as contrary to the VA disability rating schedule.  See id. (citing AR 8-16 (Mar. 9, 2012 petition for relief)).  The argument in the petition for relief that, "[b]ased on the evidence available to the PEB, the Board should have found that [Mr.] Rock is entitled to disability ratings for Major Seizure Disorder, Grand Mal (VA Code 8910)," AR 10 (Mar. 9, 2012 petition for relief), is representative of plaintiff's alleged argument "that the PEB . . . made an erroneous rating decision under the [VA disability rating schedule]," see Pl.'s Reply 3.  The court cannot discern a suggestion from this, or any other statement in the petition for relief, of an allegation that the PEB applied rating factors that would be inappropriate under the VA disability rating schedule.

Plaintiff also argues that, by "submitting the [March 2010] VA [rating decision] to the PEB, arguing it at the Formal PEB hearing, and raising the letter as probative evidence before the [director], plaintiff did not waive argument about the VA rating [decision]."  Id. at 3-4.  However, arguing that VA rating decision is persuasive evidence is not the same as arguing in the petition for relief that the formal PEB failed to consider the VA rating decision.  Instead, the petition for relief alleges that "the Board relied entirely on the [Martins examination]," AR 10 (Mar. 9, 2012 petition for relief), and appears to take issue not with the formal PEB's failure to discuss the VA rating decision but with its credibility determination with respect to the Kaplan examination, see id. at 10, 12 (discussing the credibility determination and specific evidence--not including the VA rating decision--that plaintiff argued should have received more weight).

The court agrees with defendant that plaintiff has waived these three arguments because plaintiff failed to raise them in his petition for relief. Cf. L.A. Tucker, 344 U.S. at 37 (1952) (stating the "general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice"); Metz, 466 F.3d at 999 (holding that the plaintiff waived an argument in this court by failing to assert it "in either his initial or reconsideration petition before the [corrections board]"); Murakami, 398 F.3d at 1354 (affirming this court's determination that the plaintiff was precluded from raising an issue for the first time in this court because the plaintiff had failed to raise the issue before the corrections board). The court considers plaintiff's remaining arguments in turn.

### 2.      The Navy's Determination Was Not Arbitrary and Capricious

To show that a military disability evaluation board acted arbitrarily and capriciously, a plaintiff must demonstrate that evidence was ignored or unreasonably construed or that designated duties were not performed by the board. See Stephens, 174 Ct. Cl. at 373-74, 358 F.2d at 955 (finding reasonable the determination of the Secretary of the United States Army that the plaintiff in that case was fit for duty when the record did "not warrant the conclusion that the personnel involved ignored relevant and competent evidence, . . . unreasonably construed the significant body of medical documents before them, or . . . failed to discharge their designated duties" in any other manner). The court will not find the Navy's disability determination arbitrary and capricious if it "evinc[es] rational reasoning and consideration of relevant factors." See Adv. Data Concepts, 216 F.3d at 1058.

Here, plaintiff contends that the formal PEB decision was arbitrary and capricious because it failed to adequately explain its determination that the severity and frequency of seizures described in the record of the Martins examination was more credible than that described in the records of the Kaplan examination, Compl. ¶ 20; see Pl.'s Mot. 6 (arguing that the PEB's "conclusory rejection of Dr. Kaplan's examination fails to articulate a reason between the facts and the decision made"), and failed to address the relative comprehensiveness of the two examinations, Compl. ¶ 20; see also Pl.'s Mot. 7 ("The PEB and the [director] did not adequately address the fact that Dr. Kaplan's exam was more comprehensive and included EEG and electrodiagnostic exams."[10]). Plaintiff

---

[10] The Complaint discusses the electroencephalogram (EEG) test and asserts that the EEG report showed that Mr. Rock "had one clear seizure and perhaps two" during the EEG. Compl. ¶ 13. But see Def.'s Mot. 17 ("The notes from the EEG report do not document any visible seizure (major or minor), but merely indicate that there was electrical activity consistent with a seizure."); Def.'s Reply 10 (similar). The Complaint also recounts that Mr. Rock argued to the formal PEB that the EEG report supported an increased rating. Id. ¶ 14; cf. 38 C.F.R. § 4.121 (stating that seizure frequency "should be ascertained under the ordinary conditions of life (not

further contends that the formal PEB's decision was arbitrary and capricious because it failed to mention an increase in plaintiff's medication.  See Pl.'s Mot. 6.

With respect to the director's denial of plaintiff's petition for relief, plaintiff argues that the director acted arbitrarily and capriciously "because [he] articulated no reason for the decision [he] made, and actually stated that the reason[] for the variance between the [Martins examination and Kaplan examination] was 'unclear.'"  Compl. ¶ 22; see also Pl.'s Mot. 6-7 (discussing the director's analysis and why, according to plaintiff, it "does not hold up").

Defendant counters that "[t]he Navy reasonably found that the seizure history reported by Mr. Rock to Dr. Kaplan was inconsistent with the seizure history he reported [to Dr. Martins] less than two months earlier" and that "it was entirely appropriate for the Navy to rely upon the [Martins examination]" given the inconsistency and Mr. Rock's "lack of medical treatment for the six to eight tonic-clonic seizures allegedly occurring in the previous six months."  Def.'s Mot. 17; see also Def.'s Reply 8 (asserting that the formal PEB found the seizure history in the Martins examination to be corroborated but the seizure history in the Kaplan exam to be uncorroborated).  Further, defendant contends that "whichever examination was more 'comprehensive' is irrelevant to the credibility of Mr. Rock's statements regarding his seizure history during the examinations."  Def.'s Reply 10 (emphasis omitted).  As to the purported increase in medication, defendant states that "plaintiff fails to explain why the increased dosage is relevant" and notes that the Administrative Record "does not suggest that the purported increased dosage was due to major seizures or frequent minor seizures."  Id. at 8.

Defendant also argues that the director's statement "that it was 'unclear' why the alleged tonic-clonic seizures were not reported earlier" expressed "understandable skepticism that Mr. Rock could suffer from recent tonic-clonic seizures but:  1) not report them during [the Martins examination]; and 2) not seek medical attention for such serious seizures."  Def.'s Mot. 15; see also id. at 16 (arguing that the director "reasonably found that the lack of contemporaneous collaborating evidence, such as emergency room or similar notes indicating medical treatment for the alleged major seizures, impaired the credibility of Mr. Rock's statements to Dr. Kaplan"); Def.'s Reply 8-9 (similar).

Based on the evidence contained in the Administrative Record, the court concludes that the credibility determinations of the formal PEB and the director each demonstrated "rational reasoning and consideration of relevant factors."  Cf. Adv. Data Concepts, 216 F.3d at 1058.  As defendant notes, see Def.'s Reply 9, both the Martins

while hospitalized)").  However, the only argument that Mr. Rock appears to make to this court about the EEG report is that the EEG report is evidence that the Kaplan examination was more comprehensive than the Martins examination.  See Pl.'s Mot. 7.

examination and Kaplan examination recorded seizure history attributed to Mr. Rock's descriptions--and those seizure histories were inconsistent, compare AR 240 (Martins examination) (stating that Mr. Rock reported suffering "one to two partial seizures every 4 to 6 months" but no "grand mal or generalized seizures") with AR 227 (Kaplan examination) (stating that Mr. Rock thought he had experienced six to eight tonic-clonic or grand mal seizures in the six months before the examination). Accordingly, the formal PEB and director had to make a credibility determination to rate Mr. Rock on the VA disability rating schedule. Cf. 38 C.F.R. § 4124a (assigning disability ratings based on seizure frequency and severity).

Both the formal PEB and the director considered the Kaplan examination and addressed it in their analysis and gave reasoned explanations for why they construed the evidence to give more weight to the Martins examination. Cf. Stephens, 174 Ct. Cl. at 373-74, 358 F.2d at 955 (finding the military's determination reasonable when there was no evidence that the military ignored or unreasonably construed relevant evidence or failed to perform designated duties). The formal PEB found the seizure history reported in the Martins examination more credible, reasoning that Mr. Rock's medication dosage and ability to maintain full- time employment were relevant factors that "corroborated" the reasonableness of its conclusion. See AR 198-99 (Jan. 26, 2012 formal PEB decision). Additionally, the formal PEB addressed the credibility of the Kaplan examination, stating that it contained "new and uncorroborated assertions." Id. at 199. The formal PEB appeared to find the Kaplan examination less credible than the Martins examination, at least in part, on the basis that, if the history reported in the Kaplan examination were accurate, Mr. Rock would have been unlikely either to fail to follow up with any physician between the Martins examination and the Kaplan examination or to maintain full-time employment. See id. at 198-99 (noting Mr. Rock's failure to follow up with a physician and his employment status and finding the Martins examination "to be the most credible and trustworthy evidence available"). Likewise, the director agreed with the formal PEB that the seizure history reported in the Martins examination was more credible, reasoning that a lack of medical documentation showing treatment for more severe and frequent seizures was a relevant factor weighing against the credibility of the seizure history reported in the Kaplan examination. See AR 2-3 (Mar. 16, 2012 letter denying petition for relief).

Further, the court agrees with plaintiff that neither the formal PEB nor the director mention the purported increase in medication in their determinations. However, whether plaintiff's medication was increased appears to the court to be another discrepancy between the Martins examination and the Kaplan examination. Compare AR 227 (Kaplan examination) (stating that Mr. Rock's treatment with Keppra was "increased on October 20th to three times a day") with AR 240-42 (Martins examination) (dated October 20, 2011 and mentioning no increase in dosage). The failure of the formal PEB

and director to discuss an increase in medication, therefore, appears to be consistent with their credibility determinations.

Because the court finds the credibility determinations of the formal PEB and director to "evinc[e] rational reasoning and consideration of relevant factors," cf. Adv. Data Concepts, 216 F.3d at 1058, the court shall not substitute its judgment for theirs, cf. Heisig, 719 F.2d at 1156 (stating that "courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence"); Sanders, 219 Ct. Cl. at 302, 594 F.2d at 814 ("[W]hile [the court] may disagree with a correction board about whether or not a specific situation was unjust, [the court] will not substitute [its] judgment for the board's when reasonable minds could reach differing conclusions."). Plaintiff has failed to demonstrate by cogent and clearly convincing evidence that the Navy's determination was arbitrary and capricious. Cf. Dorl, 200 Ct. Cl. at 633 (requiring cogent and clearly convincing evidence); Stephens, 174 Ct. Cl. at 371-72, 358 F.2d at 954 (same).

3.    The Navy's Determination Was Not Contrary to Law

Plaintiff appears to contend that the director's decision was also contrary to law because the director applied the wrong evidentiary standard. See Compl. ¶ 22; Pl.'s Mot. 4. But see Pl.'s Mot. 5 ("The question is not whether the [director] used the correct standard--it is whether the original adjudication and decisions made by the fact finders at the PEB were conducted using the correct evidentiary standards."). Specifically, plaintiff argues that the applicable standard required that "'the preponderance of the evidence must be against the claim for benefits to be denied.'" Compl. ¶ 21 (emphasis added) (quoting Gilbert v. Derwinski, 1 Vet. App. 49, 54 (1990)). Plaintiff alleges that the director erred because he did not find that a preponderance of the evidence was against Mr. Rock's claim for an increased rating. Id. ¶ 22. Further, plaintiff argues that this alleged error "infringes on [plaintiff's] constitutional and statutory rights, . . . dilutes the protections of a fair and full hearing and makes review impossible" in this court. Pl.'s Reply 5; cf. 10 U.S.C. § 1214 ("No member of the armed forces may be retired or separated for physical disability without a full and fair hearing if he demands it.").

In addition, plaintiff contends that the director's denial of his petition for relief was contrary to law because, according to plaintiff, the director "injected a requirement that there be emergency room visit notes or similar notes indicating medical treatment sought due to a seizure, not present in the rating criteria under the [VA disability rating schedule]." Compl. ¶ 23 (internal quotation marks omitted); see Pl.'s Reply 6 (alleging that the Navy "cannot use factors not in the [VA] rating criteria to deny a rating based on those criteria"); see also Pl.'s Mot. 7 ("It is bizarre to reject the evidence [contained in the Kaplan examination] because there is a lack of [supporting] medical documentation,

when the evidence is [itself] medical documentation . . . that the [director] questions the lack of.").

As to plaintiff's first argument, defendant responds that the director "applied what Mr. Rock contends to be the correct standard of review" when he "specifically found the decision of the PEB to be supported by a preponderance of the evidence." Def.'s Mot. 13 (internal quotation marks and alteration omitted); see Def.'s Reply 4 (similar). Defendant also argues that the director did not inject extra requirements but, instead, "made a factual finding that the absence of notes of medical treatment for the alleged tonic-clonic seizures lent more credibility to the history" provided in the Martins examination than it did to the history provided in the Kaplan examination. Def.'s Mot. 14; see also id. (arguing that the director "merely attached weight to the fact that someone who had suffered six to eight major tonic-clonic seizures in six months likely would have sought some medical treatment for those serious events"). Defendant is correct.

Plaintiff's argument about the correct evidentiary standard, see, e.g., Compl. ¶ 21, relies on 10 U.S.C. § 1216a, which requires the Navy to "utilize the [VA disability rating schedule], including any applicable interpretation of the schedule by the United States Court of Appeals for Veterans Claims," to the extent feasible in making disability determinations, see 10 U.S.C. § 1216a(a)(1)(A). Plaintiff then cites to Gilbert, a case from the United States Court of Veterans Appeals, as the United States Court Appeals for Veterans Claims was formerly known. See Compl. ¶ 21-22 (citing Gilbert, 1 Vet. App. at 54).

Gilbert describes what is known as the benefit of the doubt doctrine. See Gilbert, 1 Vet. App. at 54 (describing "[t]he statutory 'benefit of the doubt' standard of proof for cases dealing with veterans benefits"). The benefit of the doubt doctrine, as explained in Gilbert, requires that, if "'there is an approximate balance of positive and negative evidence regarding the merits of an issue . . . , the benefit of the doubt in resolving each such issue shall be given to the claimant.'" Id. (quoting 38 U.S.C. § 3007(b) (1988)). Gilbert interpreted this to mean that "the preponderance of the evidence must be against the claim for benefits to be denied[;] . . . when a veteran seeks benefits and the evidence is in relative equipoise, the law dictates that veteran prevails." Id. The benefit of the doubt doctrine is now codified at 38 U.S.C. § 5107(b), see 38 U.S.C. § 5107(b) (2006) ("When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant."); Peterson v. United States, 104 Fed. Cl. 196, 208 (2012) (describing the benefit of the doubt doctrine), and is embodied in regulations and Navy guidelines dealing with veterans benefits, see 38 C.F.R. § 3.102 (stating that when "a reasonable doubt arises regarding . . . the degree of disability"--that is, when there exists "an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim"--the claim shall "be resolved in favor of the claimant");

24

Def.'s App. A15 (SECNAVINST 1850.4E § 3804(a)) ("When, after careful consideration of all reasonably procurable and assembled data, [there] remains a reasonable doubt as to which rating should be applied, resolve the doubt in the member's favor.")).

However, the benefit of doubt doctrine is inapplicable if the military reasonably "determine[s] that there [is] no approximate balance of positive and negative evidence related to plaintiff's claim." See Peterson, 104 Fed. Cl. at 208. Here, the court has found that the Navy reasonably determined that the Martins examination was more credible than the Kaplan examination, that is, that there was not an approximate balance of evidence. See supra Part III.B.2. Further, the director determined that the twenty percent disability rating assigned to Mr. Rock by the formal PEB was "supported by a preponderance of the evidence." AR 2 (Mar. 16, 2012 letter denying petition for relief). The court concludes that in determining that a preponderance of the evidence supported the twenty percent disability rating, the director in effect also concluded that the same preponderance of the evidence was against the higher rating requested by Mr. Rock. Cf. Peterson, 104 Fed. Cl. at 209 (concluding that Secretary of the Air Force Personnel Council, in determining that the disability rating assigned to the plaintiff by a formal PEB was supported by a preponderance of the evidence, "concluded that a preponderance of the evidence was against plaintiff's claim that he was entitled to a [higher] disability rating"). Indeed, the director found that a preponderance of the evidence supported the formal PEB's finding that Mr. Rock suffered one to two partial seizures every four to six months and no grand mal or generalized seizures, and implicit in this finding is a finding that the preponderance of the evidence was therefore against Mr. Rock's argument that he suffered from six to eight tonic-clonic or grand mal seizures in the past six months. See AR 2-3 (Mar. 16, 2012 letter denying petition for relief). Accordingly, the court finds that the director did not err in his application of the evidentiary standard.

As to plaintiff's allegation that the director erred by injecting additional requirements into the VA disability rating schedule, the court finds that plaintiff mischaracterizes the director's actions. The Navy requires the director to "[c]onsider all relevant evidence in assessing service member fitness." See Def.'s App. A11 (SECNAVINST 1850.4E § 3303). If the seizure histories reported in the Martins examination and the Kaplan examination could have supported two different disability ratings, the director was required to "carefully consider[] . . . all reasonably procurable and assembled data" and "resolve [reasonable] doubt in the member's favor." Cf. id. at A15 (§ 3804(a)). The court concludes that, in considering whether documentation of medical treatment supported the formal PEB's factual finding that the seizure history reported in the Martins examination was more credible than that reported in the Kaplan examination, see AR 2-3 (Mar. 16, 2012 letter denying petition for relief) ("There was no documented medical evidence on file to support [Mr. Rock's] claim [that he had suffered six to eight grand mal seizures in the past six months] (e.g., emergency room visit notes or similar notes indicating medical treatment sought due to a seizure).", the director was

considering the relevant evidence, cf. Def.'s App. A11 (SECNAVINST 1850.4E § 3303). Further, in determining that the Martins examination was more credible than the conflicting Kaplan examination, see AR 2-3 (Mar. 16, 2012 letter denying petition for relief), the director also reasonably concluded that the "circumstances of [Mr. Rock's] case [were not] such that two percentage evaluations could be applied," cf. Def.'s App. A15 (SECNAVINST 1850.4E § 3804(a)). Because the VA ratings for epilepsy are based on seizure frequency and severity, see 38 C.F.R. § 4.124a (providing disability ratings for epilepsy), factual findings as to seizure frequency and severity--based on relevant evidence--are necessary to apply the VA disability rating schedule. Considering the medical evidence (or lack thereof) in making factual findings necessary to apply the VA disability rating schedule is not the same as injecting a requirement into the VA disability rating schedule that certain medical evidence is required to warrant a certain rating. Cf. 10 U.S.C. § 1216a(a)(1)(B) (providing that, in making a disability determination, the Navy "may not deviate from the [VA disability rating] schedule or any . . . interpretation of the schedule" by the United States Court of Appeals for Veterans Claims).

Plaintiff has failed to demonstrate by cogent and clearly convincing evidence that the Navy's determination was contrary to law. Cf. Dorl, 200 Ct. Cl. at 633 (requiring cogent and clearly convincing evidence); Stephens, 174 Ct. Cl. at 371-72, 358 F.2d at 954 (same).

4.     The Navy's Determination Was Based on Substantial Evidence

Plaintiff argues that "[t]he Navy's rating decision was . . . not based on substantial evidence." Pl.'s Mot. 7 (emphasis omitted). In considering plaintiff's assertion, the court is not required to reweigh the evidence; instead, the court must determine whether the Navy's twenty percent disability rating was supported by substantial evidence. Cf. Heisig, 719 F.2d at 1157. "Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Jennings, 59 F.3d at 160.

Defendant argues that, "[b]ased upon the information provided by Mr. Rock during [the Martins examination], i.e., one to two partial seizures every four to six months and no tonic-clonic seizures, Mr. Rock was entitled to a 20 percent disability rating, which is the rating he received." Def.'s Mot. 15 (internal citations omitted); see also Def.'s Reply 7 (arguing that the Navy's credibility determination was "supported by substantial evidence"). The court agrees with defendant.

A finding of twenty percent disability is appropriate under VA code 8911, cf. AR 197 (Jan. 26, 2012 formal PEB decision) (assigning a twenty percent disability rating under VA code 8911); AR 2 (Mar. 16, 2012 letter denying petition for relief) (upholding the formal PEB decision finding Mr. Rock twenty percent disabled under VA code 8911),

if a service member suffers "at least 2 minor seizures in the last 6 months," <u>see</u> 38 C.F.R. § 4.124a.  The Martins examination reported that "[Mr. Rock] may have suffered one to two partial seizures every 4 to 6 months" and that he had "not had any grand mal or generalized seizures."  AR 240 (Martins examination).  Accordingly, the Martins examination constituted substantial evidence because a reasonable mind could accept it as adequate to support a conclusion that Mr. Rock had suffered "at least 2 minor seizures in the last 6 months" but no major seizures, which would warrant a twenty percent disability rating under the VA disability rating schedule.  <u>See</u> 38 C.F.R. § 4.124a; <u>cf.</u> <u>Jennings</u>, 59 F.3d at 160 (defining substantial evidence).

IV.     Conclusion

        For the foregoing reasons, the court holds that plaintiff has failed to demonstrate by cogent and clearly convincing evidence that the Navy's disability determination was arbitrary or capricious, contrary to law or unsupported by substantial evidence.  Therefore, defendant's Motion is GRANTED and plaintiff's Motion is DENIED.  The office of the Clerk of Court shall ENTER JUDGMENT for defendant.  No costs.

        IT IS SO ORDERED.

                                                        s/ Emily C. Hewitt
                                                        EMILY C. HEWITT
                                                        Chief Judge